Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles on 12/16/2021 03:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
21STCV46014

## SUMMONS
### *(CITACION JUDICIAL)*

**BOARD OF SUPERVISORS**
**COUNTY OF LOS ANGELES**
**SUM-100**

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

2022 JAN 21

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF LOS ANGELES; LASD SERGEANT FEDER; DOES 1 through 50, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HOLLY BAIRD, NIGEL CARTER

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse, 111 N. Hill Street, Los Angeles, CA 90012

CASE NUMBER: *(Número del Caso):*

**21STCV46014**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of J. Blacknell, 200 Corporate Pointe, ste. 495, Culver City, CA 90230

| DATE: 12/16/2021 *(Fecha)* | Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by *(Secretario)* | R. Perez | , Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* County of Los Angeles
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 1/21/22 at 12:25 pm

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Electronically FILED by Superior Court of California, County of Los Angeles on 12/16/2021 03:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez, Deputy Clerk
21STCV46014

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Lawrence Riff

1 | **LAW OFFICE OF J. BLACKNELL**
2 | **JOVAN BLACKNELL (SBN 237162)**
   | **KELLEN DAVIS (SBN 326672)**
3 | 200 Corporate Pointe, Suite 495
   | Culver City, CA 90230
4 | T.: 310.469.9117; F.: 310.388.3765

5 | Attorney for Plaintiffs,
6 | **HOLLY BAIRD and NIGEL CARTER**

7 | **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8 | **COUNTY OF LOS ANGELES**
9 |

**21STCV46014**

10 | HOLLY BAIRD, NIGEL CARTER ) **COMPLAINT FOR DAMAGES**
11 | )
12 | **Plaintiffs**, ) (1) Interference with Constitutional
   | vs. ) Rights (*Bane Act – Cal. Civ. Code*
13 | ) *§52.1*)
   | COUNTY OF LOS ANGELES; LASD ) (2) Violation of Civil Rights (42
14 | SERGEANT FEDER; DOES 1 through 50, ) U.S.C. §1983)(*Excessive Force*)
   | inclusive, ) (3) Violation of Civil Rights (42
15 | ) U.S.C. §1983)(*Unlawful Search*
16 | **Defendants.** ) *and Seizure*)
   | ) (4) False Imprisonment
17 | ) (5) Intentional Infliction of Emotional
   | ) Distress
18 | )
19 | ) **DEMAND FOR JURY TRIAL**
   | )
20 | )
   | )
21 | )
   | )
22 |
23 |
24 |
25 |
26 | Plaintiffs HOLLY BAIRD and NIGEL CARTER allege on information and belief as follows:
27 |
28 |

**PARTIES**

1. At all relevant times mentioned in this Complaint, Plaintiff HOLLY BAIRD (hereinafter also "Ms. Baird") was a resident of Los Angeles County, California.

2. At all relevant times mentioned in this Complaint, Plaintiff NIGEL CARTER (hereinafter also "Mr. Carter") was a resident of Los Angeles County, California. Hereinafter, Plaintiffs Holly Baird and Nigel Carter shall be collectively referred to as "PLAINTIFFS."

3. DEFENDANT LOS ANGELES COUNTY (hereinafter, "COUNTY") was at all times relevant herein, and is, a public entity duly organized and existing under and by virtue of the laws of the State of California. DEFENDANT COUNTY is responsible for the funding, staffing, and direction of Los Angeles Sheriff's Department (hereinafter also "LASD"); for the hiring, retention, training, and supervision of LASD employees; and for the observation of rights of LASD employees and persons subject to LASD jurisdiction.

4. At all times applicable herein, LASD SERGEANT FEDER (hereinafter "DEFENDANT SERGEANT FEDER" or "FEDER") was an individual residing, on information and belief, in the County of Los Angeles.

5. Hereinafter, all individual Defendants, including those presently named as DOE defendants, shall be collectively referred to as "LASD DEFENDANTS."

6. PLAINTIFFS are ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue them by such fictitious names. PLAINTIFFS will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained. PLAINTIFFS are informed and believe, and thereon allege, that each of the fictitiously named Defendants was in some manner

1    liable and legally responsible, in that their conduct caused the damages and injuries set

2    forth herein.

3    7. PLAINTIFFS are informed and believe and based upon such information and belief

4       allege that each of the above-named parties was and is an agent, employee, principal, or

5       employer of each of the remaining defendants and vice/versa. In addition, PLAINTIFFS

6       are informed and believe and, on such basis, allege that the defendants named herein, and

7       each of them, are responsible in some manner for the occurrences herein alleged, and that

8       each of the above-named defendants conspired with, and/or aided and/or abetted each of

9       the remaining defendants in committing the acts herein alleged.

10

11

12                          **JURISDICTION AND VENUE**

13   8. This court has jurisdiction over this matter because all events at issue occurred in Los

14      Angeles County and DEFENDANT COUNTY is a public entity existing and situated in

15      Los Angeles County that operates exclusively in Los Angeles County.

16

17   9. This court has personal jurisdiction over all DEFENDANTS because COUNTY is a

18      government entity existing in and by virtue of the laws of the state of California and the

19      County of Los Angeles, and the remaining DEFENDANTS are agents or employees of

20      COUNTY and, on information and belief, all reside in Los Angeles County. All of

21      DEFENDANTS' official activities take place in Los Angeles County which is located

22      within the jurisdiction of this court.

23

24   10. This court has supplemental jurisdiction over Plaintiff's claims that arise under the laws,

25      treaties, and Constitution of the United States because those claims arise from the same

26      occurrence that gave rise to the causes of action that form the primary causes of action

27      alleged here.

28

11. On September 22, 2021, PLAINTIFFS filed a notice of government claim with the Los Angeles County Board of Supervisors pursuant to the California Tort Claims Act. *Cal. Gov. Code section 910-945.6.*

12. On November 8, 2021, PLAINTIFFS government claim was rejected by operation of law as a result of DEFENDANT COUNTY's failure to respond to the claim within 45 days of its receipt.

## COMMON ALLEGATIONS

13. On July 11, 2021, at approximately 1:00 p.m. PLAINTIFFS traveled to El Matador Beach in the County of Los Angeles in Ms. Baird's Audi Q5 vehicle. Mr. Carter was driving the vehicle while Ms. Baird rode in the passenger seat. Mr. Carter parked the vehicle in a clearly marked parking space in the lot that is specifically designated for patrons of the beach.

14. Shortly after arriving, while PLAINTIFFS sat in the vehicle talking to one another, approximately 12 Los Angeles County Deputy Sheriffs, including Doe Defendants 1-20, wearing LASD uniforms with badges prominently displayed, converged on the vehicle with guns drawn, shouting, and making commands to PLAINTIFFS.

15. Though shocked at the deputies' presence, and terrified by their guns and the extremely hostile show of force, PLAINTIFFS complied with the deputies' commands by placing their hands in the air. Upon further commands from the deputies, Mr. Carter remained frozen, terrified with his hands in plain sight while deputies threatened to kill him with guns pointed at his head, while Ms. Baird followed orders by reaching out of the car windows to open the doors from the exterior door handle. As soon as the doors were

open, deputies rushed forward and seized Ms. Baird, forced her to her knees, and handcuffed her.

16. As DEFENDANTS continued to escalate the encounter despite no resistance from PLAINTIFFS, more marked Sheriff's vehicles continued to arrive at the parking lot and more deputies exited the cars to contribute to the violent seizure of PLAINTIFFS.

17. Once handcuffed, Ms. Baird was hoisted from the hot asphalt of the parking lot and physically dragged to one of the Sheriff's vehicles in the parking lot by DEFENDANTS and placed in the back of the car, still handcuffed.

18. During and after the point at which Ms. Baird was dragged to the back of the Sheriff's car, DEFENDANTS continued to point guns at Mr. Carter's head, threatening to kill him if he moved. When he attempted to ask about the reason for the encounter and explain that there must be mistake, DEFENDANTS increased the hostility of their threats, and more deputies unholstered their weapons and threatened Mr. Carter's life. Eventually, deputies physically pulled Mr. Carter from the car, then placed handcuffs on his wrists with such force that Mr. Carter lost circulation to his hands and sustained visible contusions to his wrists. He was then pushed to his knees with such force that he fell from his feet to his knees then to his face because he was unable to break his fall due to being handcuffed. When Mr. Carter complained of pain due to the extremely tight handcuffs, deputies again told him to shut up and threatened to shoot him.

19. While temperatures continued to rise in the rear of the Sheriff's vehicle on the hot, sunny summer day, Ms. Baird remained locked in the rear of the sweltering vehicle, handcuffed, for approximately one hour.

COMPLAINT FOR DAMAGES

20. After that extended period alone in the rear of the vehicle, a female deputy finally opened the door and attempted to compel Ms. Baird to claim that Mr. Carter had assaulted her although no violence whatsoever had occurred. Ms. Baird vehemently, repeatedly, and categorically told the deputy that no violence whatsoever had occurred between she and Mr. Carter. Unsatisfied with this answer Ms. Carter was placed back in the rear of the Sheriff's locked vehicle for approximately another 30 minutes or more.

21. When Ms. Baird was finally released from the rear of the squad car, Mr. Carter remained handcuffed and surrounded by deputies with their weapons drawn.

22. Throughout the ordeal, an increasingly large crowd formed with people watching, filming, and ridiculing PLAINTIFFS.

23. When PLAINTIFFS were finally released, they asked to speak with a supervisor. DEFENDANT SERGEANT FEDER stepped forward and identified himself as a supervisor. DEFENDANT FEDER spoke with PLAINTIFFS but refused to identify any of the officers that engaged in the above-described conduct.

24. On information and belief, DEFENDANT FEDER was present for a significant portion of the events in question and thus witnessed the seizure and violent treatment against PLAINTIFFS.

25. Immediately following the traumatic ordeal, PLAINTIFFS traveled to the Lost Hills Sheriff's Department to file a Watch Commander Complaint regarding the abuse that they suffered. No action was taken for the wrongs that PLAINTIFFS endured.

COMPLAINT FOR DAMAGES

6

**FIRST CAUSE OF ACTION– VIOLATION CIVIL CODE SECTION 52.1(B)**

**INTERFERENCE WITH CONSTITUTIONAL RIGHTS**

**By Plaintiffs HOLLY BAIRD and NIGEL CARTER**

**Against ALL DEFENDANTS:**

26. PLAINTIFFS hereby repeat, re-allege and incorporate the allegations contained in all paragraphs above as thought fully set forth herein.

27. At all times relevant to this complaint, DEFENDANTS acted under color of law.

28. PLAINTIFFS have, and at all times referenced in this Complaint has had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, to be safe and secure in the unmolested integrity of body.

29. The Plaintiff has, and at all times referenced in this Complaint has had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, against the application of excessive force by law enforcement employed for a wanton and illegitimate purpose.

30. PLAINTIFFS have, and at all times referenced in this Complaint has had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, against search and seizure by law enforcement officers where the facts possessed by said officers objectively fail to furnish probable cause that a crime is being, will be, or has been committed.

31. DEFENDANTS have, by way of physical force, threats, intimidation, or coercion as set forth herein interfered with or attempted to interfere with the Plaintiff's right to be safe and secure in the unmolested integrity of body through the conduct described herein.

COMPLAINT FOR DAMAGES

32. DEFENDANTS have, by way of physical force, threats, intimidation, or coercion as set forth herein interfered with or attempted to interfere with PLAINTIFFS' right against excessive force by law enforcement employed for a wanton and unlawful purpose.

33. DEFENDANTS have, by way of physical force, threats, intimidation, or coercion as set forth herein interfered with or attempted to interfere with PLAINTIFFS' right against unreasonable search and seizure.

34. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from obtaining the full enjoyment of life; and will incur medical expenses for physical injuries and, additionally, for psychological treatment, therapy, and counseling.

## SECOND CAUSE OF ACTION – VIOLATION OF CIVIL RIGHTS (42 U.S.C.

## §1983)(EXCESSIVE FORCE)

## By PLAINTIFFS HOLLY BAIRD and NIGEL CARTER

## Against ALL DEFENDANTS

35. PLAINTIFFS reallege and incorporate herein as if set forth in full, paragraphs 1 through 34, above.

36. At all times relevant herein, PLAINTIFFS had, and have, a right, secured by the Fifth, Eighth Amendments to the United States Constitution, made applicable to the states through the Fourteenth Amendment, to freedom from official misconduct and excessive and gratuitous force applied with a purpose to harm and punish that is unrelated to any legitimate law enforcement or penological objectives.

37. By surrounding PLAINTIFFS in Ms. Baird's vehicle with guns drawn and pointed at PLAINTIFFS heads while PLAINTIFFS were violating no laws and were visibly not endangering any person, while vocalizing an intent to discharge the guns at PLAINTIFFS, DEFENDANTS intentionally employed gratuitous and excessive force against PLAINTIFFS with a purpose to endanger their health and well-being, and did in fact endanger their health and wellbeing, with deliberate indifference and willful disregard for their civil rights under the Constitution and laws of the United States and the State of California.

38. DEFENDANTS acted deliberately and with knowledge that it was against the law to intentionally act in a manner with the malicious purpose to, or reckless disregard for the substantial likelihood that they would endanger PLAINTIFFS' safety and well-being.

39. DEFENDANTS acted under color of law and abused their authority as law enforcement officers by pointing numerous firearms at PLAINTIFFS and shouting their intent to use deadly force against them although they were not violating any law or resisting any lawful order by any officer. Even after engaging PLAINTIFFS violently, DEFENDANTS' unlawful conduct was ongoing in that they continued to point guns at both PLAINTIFFS for an extended period of time even after the seizure was accomplished.

40. After seizing PLAINTIFFS, DEFENDANTS willfully employed further excessive force against Ms. Baird by violently forcing her from the vehicle onto her knees onto the hot pavement, handcuffing her, then dragging her to the back of a police car although she was concededly not suspected of any crime, and she was not resisting any officer.

41. After seizing PLAINTIFFS, DEFENDANTS continued to willfully employ deadly excessive force against Mr. Carter when multiple deputies continued to point firearms at his head while mocking him and shouting that they would kill him if he moved although he was not resisting any officer or any command and officers had no reason to believe that he posed a threat to any person, then handcuffing him so tightly as to cause contusions to his wrists and cut off his circulation, and by slamming him to the ground with such force that he fell to his knees then to his face on the asphalt.

42. DEFENDANTS did not act in furtherance of any legitimate law enforcement objective through the conduct described herein.

43. PLAINTIFFS are informed and believes that this brazen conduct was part of an unlawful custom within LASD that occasioned and facilitated the conditions where DEFENDANTS believed that they could take such unlawful action against PLAINTIFFS without repercussions.

44. DEFENDANTS' was so brazen, and all officers that were present for the unlawful actions resulting in PLAINTIFF's injuries were so familiar and comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of LASD, under which LASD representatives apply unlawful violence and excessive force against citizens for reasons unrelated to any legitimate penological objective, and other representatives with knowledge of the unlawful conduct adhere to silence and refuse to intervene or report the unlawful activity.

45. Officers, support staff, supervisors, and legislating authorities within Los Angeles County know of specific instances of this conduct undertaken as part of said custom and are aware of complaints and grievances stemming from this conduct, yet despite such

knowledge, intentionally fail to take action to prevent or remedy the perpetuation and consequences of this custom. Indeed, DEFENDANT SERGEANT FEDER was present for much of the incident at issue and was working in a supervisory capacity at the time in question, yet deliberately failed to intervene in or report the unlawful conduct that he witnessed. PLAINTIFFS filed a complaint with the Lost Hills Sheriff's Department, and yet COUNTY ratified DEFENDANTS' objectively unlawful conduct by denying any wrongdoing.

46. PLAINTIFF further alleges on information and belief that the entire chain of command in COUNTY, up to and including the Board of Supervisors, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

47. DEFENDANTS acted with impunity and without fear of punishment or reprimand from supervisors or any other authority. In addition to the presence of many officers including supervising officers, the conduct in question occurred at a public beach in the presence of numerous civilian witnesses. Furthermore, LASD officers' uniforms are equipped with Body-Worn Cameras capable of recording any incidents that occur while an officer is on duty. DEFENDANTS' actions despite the certainty that their conduct would be seen by fellow officers and civilians and likely captured on camera reflects the actors' knowledge of the custom or policy and their belief that superiors or other officials would allow, affirm, or not punish them for such conduct.

48. On information and belief, the excessive force to which PLAINTIFFS were subjected is a routine component of the custom within the COUNTY, specifically LASD, under which countless other individuals have been, and continue to be, victims of excessive force

causing serious and permanent injuries and subjected to similar threats, intimidation, and abuse to which PLAINTIFFS were subjected in violation of their civil rights.

49. As a direct and proximate result of DEFENDANTS' actions pursuant to its established practice, policy, or custom, PLAINTIFFS were subjected to extreme violence, and sustained severe physical, mental, and emotional damages in an amount subject to proof at trial.

50. Plaintiff is informed and believes that DEFENDANTS acted knowingly and willfully, with malice and oppression and with the intent to harm PLAINTIFF. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

### THIRD CAUSE OF ACTION – VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983)(UNLAWFUL SEARCH AND SEIZURE)

### By PLAINTIFFS HOLLY BAIRD and NIGEL CARTER

### Against ALL DEFENDANTS

51. PLAINTIFFS reallege and incorporate herein as if set forth in full, paragraphs 1 through 50, above.

52. At all times relevant herein, PLAINTIFFS had, and have, a right, secured by the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, to be secure in their persons and property and free from unreasonable searches and seizures.

53. From the moment that deputies surrounded Ms. Baird's car with guns drawn while aggressively shouting commands at PLAINTIFFS, PLAINTIFFS were seized because they were not free to leave or terminate the encounter.

54. By seizing PLAINTIFFS while they were violating no law through the violent display of force and actual use of force including deputies surrounding Ms. Baird's vehicle with firearms drawn, and forcibly keeping PLAINTIFFS in custody by placing Ms. Baird in a police car handcuffed and continuing to point guns and threaten Mr. Carter, DEFENDANTS violated PLAINTIFFS' right against unreasonable search and seizure with deliberate indifference and willful disregard for their civil rights under the Constitution and laws of the United States and the State of California.

55. DEFENDANTS acted deliberately and with knowledge that it was against the law to seize PLAINTIFFS without legal cause.

56. DEFENDANTS acted under color of law and abused their authority as a law enforcement officers not only by seizing PLAINTIFFS without cause but by executing said seizure by pointing numerous firearms at PLAINTIFFS and shouting their intent to use deadly force against them although they were not violating any law or resisting any lawful order by any officer. Even after the initial unlawful seizure, DEFENDANTS' enhanced the harm to PLAINTIFFS by keeping PLAINTIFFS in custody for an extended period of time while DEFENDANTS attempted to forge a justification for seizing PLAINTIFFS.

57. After seizing PLAINTIFFS, DEFENDANTS continued to willfully employ deadly excessive force against Mr. Carter when multiple deputies continued to point firearms at his head while mocking him and shouting that they would kill him if he moved although

he was not resisting any officer, or any command and officers had no reason to believe that he posed a threat to any person.

58. PLAINTIFF is informed and believes that this brazen conduct was part of an unlawful custom within LASD that occasioned and facilitated the conditions where DEFENDANTS believed that they could take such unlawful action against PLAINTIFFS without repercussions.

59. DEFENDANTS' was so brazen, and all officers that were present for the unlawful actions resulting in PLAINTIFF's injuries were so familiar and comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of LASD, under which LASD representatives unreasonably seize citizens for reasons unrelated to any legitimate law enforcement objective, and other representatives with knowledge of the unlawful conduct adhere to silence and refuse to intervene or report the unlawful activity.

60. Officers, support staff, supervisors, and legislating authorities within Los Angeles County know of specific instances of this conduct undertaken as part of said custom and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetuation and consequences of this custom. Indeed, DEFENDANT SERGEANT FEDER was present for much of the incident at issue and was working in a supervisory capacity at the time in question, yet deliberately failed to intervene in or report the unlawful conduct that he witnessed. PLAINTIFFS filed a complaint with the Lost Hills Sheriff's Department, and no person, including but not limited to SERGEANT FEDER, took any action to address the violations of PLAINTIFFS' rights.

61. PLAINTIFF further alleges on information and belief that the entire chain of command in COUNTY, up to and including the Board of Supervisors, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

62. DEFENDANTS acted with impunity and without fear of punishment or reprimand from supervisors or any other authority. In addition to the presence of many officers including supervising officers, the conduct in question occurred at a public beach in the presence of numerous civilian witnesses. In addition, LASD officers' uniforms are equipped with Body-Worn Cameras capable of recording any incidents that occur while an officer is on duty. DEFENDANTS' actions despite the certainty that their conduct would be seen by fellow officers and civilians and likely captured on camera reflects the actors' knowledge of the custom or policy and their belief that superiors or other officials would allow, affirm, or not punish them for such conduct.

63. On information and belief, the unlawful seizure to which PLAINTIFFS were subjected is a routine component of the custom within the COUNTY, specifically LASD, under which countless other individuals have been, and continue to be, victims of unlawful seizures causing serious and permanent injuries and subjected to similar threats, intimidation, and abuse to which PLAINTIFFS were subjected in violation of their civil rights.

64. As a direct and proximate result of DEFENDANTS' actions pursuant to its established practice, policy, or custom, PLAINTIFFS were deprived of their constitutional rights, and sustained severe physical, mental, and emotional damages in an amount subject to proof at trial.

COMPLAINT FOR DAMAGES

15

65. Plaintiff is informed and believes that DEFENDANTS acted knowingly and willfully, with malice and oppression and with the intent to harm PLAINTIFF. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

## FOURTH CAUSE OF ACTION– FALSE IMPRISONMENT

### By PLAINTIFFS HOLLY BAIRD and NIGEL CARTER

### Against LASD DEFENDANTS:

66. PLAINTIFFS reincorporate, and reallege as if set forth fully herein, paragraphs 1 through 65, above.

67. By engaging in the conduct described herein, DEFENDANTS unlawfully and intentionally imprisoned PLAINTIFFS and thus deprived PLAINTIFFS of their liberty without lawful privilege or authority.

68. By engaging in the conduct described herein, DEFENDANTS acted with express knowledge that no probable cause existed to seize PLAINTIFFS, but intentionally deprived PLAINTIFFS of their liberty despite such knowledge.

69. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFFS suffered the damages including but not limited to physical pain, indignation, fear, stress, anxiety, stigma, and embarrassment.

70. On information and belief, DEFENDANTS and DOES 1 through 50, inclusive, acted knowingly and willfully, with reckless disregard for the substantial risk of severe harm to PLAINTIFFS. Therefore, PLAINTIFFS are entitled to an award of punitive damages

against the individual defendants, not any public entity, in order to punish those

defendants and to deter them and others from such conduct in the future.

## FIFTH CLAIM - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### By PLAINTIFFS HOLLY BAIRD and NIGEL CARTER

### Against LASD DEFENDANTS:

71. PLAINTIFFS hereby repeat, re-allege and incorporate the allegations contained in
paragraphs 1 through 70, above, as if fully set forth herein.

72. Through the acts described herein, DEFENDANTS engaged in conduct that was extreme
and outrageous, beyond the scope of conduct that which is acceptable in a civil society,
and that DEFENDANTS engaged in such conduct wantonly and for the purpose of
harassing, bullying, and harming PLAINTIFFS with knowledge that they had no legal
cause for their actions.

73. PLAINTIFFS are informed and believe that DEFENDANTS engaged in this conduct of
knowingly and with the intent to cause them to suffer extreme emotional distress, or with
reckless disregard for the substantial certainty that they would suffer extreme emotional
distress as a result of DEFENDANTS' conduct.

74. As a result of this intentional, extreme, and outrageous conduct, PLAINTIFFS suffered
extreme emotional distress including but not limited to extreme grief, fear, terror,
frustration, helplessness, confusion, and anxiety.

75. PLAINTIFFS are informed and believes that DEFENDANTS and DOES 1 through 50,
inclusive, acted knowingly and willfully, with reckless disregard for the substantial risk
of severe harm Plaintiff. Therefore, Plaintiff is entitled to an award of punitive damages

1     against the individual defendants, not any public entity, in order to punish those

2     defendants and to deter them and others from such conduct in the future.

3                                          **PRAYER**

4
5           WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of action

6     as follows:

7           1. Plaintiff demands a jury trial as to the issues triable;

8           2. General damages and special damages according to proof;

9
10          3. Punitive damages against the individual defendants, and not any public entity;

11          4. Attorney's fees pursuant to 42 U.S.C. §1983, California Civil Code §52.1, and

12             any other appropriate statute;

13          5. Injunctive relief, both preliminary and permanent, as allowed by law;

14          6. Costs of suit incurred herein; and

15
16          7. Such further relief as the Court deems just and proper.

17
18    Dated: December 4, 2021                    Respectfully submitted,

19
20                                               LAW OFFICE OF J. BLACKNELL

21

22                                               By: Kellen J. Davis
23                                               KELLEN DAVIS
24                                               Attorney for Plaintiffs

25

26

27

28


                                  COMPLAINT FOR DAMAGES

                                                                                    18